UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS,
SAN ANTONIO DIVISION.

| | | |
|---|---|---|
| PETER VALLECILLO, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NO. SA-03-CA-1120-OG |
| | § | |
| ALPHONSO R. JACKSON, ACTING | § | |
| SECRETARY OF THE DEPARTMENT OF | § | |
| HOUSING AND URBAN DEVELOPMENT, | § | |
| Defendant. | § | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is defendant's motion for summary judgment.[1] (Docket no. 19.) Plaintiff Peter Vallecillo sued his former employer alleging: (1) hostile work environment based on race, national origin, and protected activity; (2) constructive discharge; and (3) that his grade and salary level assignment constituted discrimination based on race and national origin.

HUD hired plaintiff as a Community Builder Fellow in September 1998. The Community Builder (CB) program was designed to hire a diverse group of professionals in 81 HUD regional offices to provide outreach services to foster community and economic development. Plaintiff was one of 400 Community Builders (CBers) selected into this program out of a pool of over 8,000 applicants. After candidate selections were made, HUD's Human Resources department

---

[1] Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). All facts and inferences are viewed in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The opposing party may not rely on mere allegations or denials, however, but must set forth specific facts establishing that genuine issues exist for trial. See FED. R. CIV. P. 56(e). Only factual disputes "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

reviewed each selectee's prior experience pursuant to OPM guidelines and recommended a salary grade level of either GS-13, GS-14, or GS-15.

Plaintiff was offered a CB fellowship position at the GS-13 level, and he accepted the offer in writing. Plaintiff contends that Hispanics are underrepresented in the CB program and that male Anglos and Blacks had higher GS ratings than Hispanic males. Plaintiff began complaining of these contentions from virtually his first day on the job. He took his complaints to, among others, his first-level supervisor Cynthia Leon, to HUD Deputy Secretary Saul Ramirez, and to Congressman Charlie Gonzalez. On two occasions in November of 1998, two supervisors in the San Antonio office complained to Leon that plaintiff had behaved inappropriately and had been verbally abusive during meetings with him. In February of 1999, Leon accused plaintiff of unprofessional conduct related to his office hours. In March 1999, plaintiff and other CBers met with Leon to discuss their concerns about her lack of leadership and direction. Later than month plaintiff received his performance appraisal and a memorandum of counseling from Leon. The memorandum of counseling admonished plaintiff for several incidents of unprofessional conduct, including the verbal confrontations with supervisors, plaintiff's use of the email system, and plaintiff's disrespectful attitude toward Leon. The memorandum of counseling did not result in lost pay or benefits or other economic consequences. Plaintiff resigned his position on October 29, 1999.

### Hostile work environment.

To prevail on a hostile work environment claim, the plaintiff must prove that: (1) he belonged to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race, national origin, or protected activity; and (4) the

2

harassment affected a term, condition, or privilege of employment. Frank v. Xerox Corp., 347 F.3d 130, 138 (5th Cir. 2003). The plaintiff must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); Frank, 347 F.3d 138. Whether an environment meets this standard depends on " 'all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " Harris, 510 U.S. at 23. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1988) (internal quotation marks omitted).

    Assuming plaintiff has raised a fact issue on the first two elements of his prima facie claim, he has not done so on the third and fourth elements. Plaintiff listed nine separate actions in his deposition that he believes comprised a hostile work environment. (Vallecillo depo. at 152-53.) In addition, in his response, plaintiff lists eight incidents which partially overlap those listed in his deposition. Response at 25-27. Accepting all of these events as true, none are related to his protected status, that is, his race, national origin, or protected activity. The only statements that come close to being racial slurs are that Ms. Leon referred to him as "Che Guevara" on two occasions, and his second-level supervisor, Betsy Julian, referred to him once as an "aggressive Hispanic." Even if these statements can be classified as racially offensive, they are not sufficiently severe or pervasive to constitute a hostile work environment.

    In addition, the primary alleged harasser, Cynthia Leon, is also Hispanic. This undercuts

3

plaintiff's argument that the harassment was based on his race or national origin. See, e.g., Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 1002 (5th Cir. 1996) (DeMoss, J., concurring in part and dissenting in part) ("proof that all of the decision makers were members of the same race as the complaining employee would considerably undermine the probability that race was a factor in the employment decision"), abrogated on other grounds, Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).

### Constructive discharge.

To prove a constructive discharge, a "plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." Faruki v. Parsons, 123 F.3d 315, 319 (5th Cir.1997). Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim. Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001). Thus, because plaintiff's hostile environment claim has failed, his constructive discharge claim must likewise fail.

### Salary discrimination based on race.

Plaintiff, hired at the GS-13 level, believes he should have been hired at the GS-14 level or higher and that HUD did not do so because of race or national origin discrimination. As indicated, plaintiff began complaining about his pay grade from virtually his first day on the job. Plaintiff accepted his position on September 12, 1998. He indicates he first became aware of his alleged discriminatory salary grade during his training orientation in Washington which occurred in September shortly after he began his employment. Plaintiff raised the issue of his salary with Cynthia Leon on September 30, 1998. Response at 2. Plaintiff also raised the issue of his salary in a letter to HUD Deputy Secretary Saul Ramirez in a December 18, 1998 letter. Motion for

4

Summary Judgment, appendix 8. Plaintiff first contacted an EEO Counselor about alleged discrimination on March 22, 1999, some three to six months after he admittedly learned of the alleged discrimination.

Before bringing suit, a federal employee must exhaust his administrative remedies against his employer. Fitzgerald v. Secretary, U.S. Dept. of Veterans Affairs, 121 F.3d 203, 206 (5th Cir. 1997). If a federal employee fails to exhaust his administrative remedies, the district court cannot adjudicate the employee's Title VII claim. Id.; see also Porter v. Adams, 639 F.2d 273, 276 (5th Cir. 1981) (exhaustion is "an absolute prerequisite" to suit under § 2000e-16). A federal employee must initiate contact with a designated agency EEO counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action. 29 C.F.R. § 1614.105(a). Thus, any alleged employment actions that occurred prior to the 45-day period preceding plaintiff's first contact with the EEO Counselor are barred, absent a showing of waiver, estoppel, or equitable tolling. Teemac v. Henderson, 298 F.3d 452, 454 (5th Cir. 2002). As plaintiff has not even attempted to show his discriminatory pay claim is timely, it is barred. Even if the claim were properly before the Court, plaintiff has failed to raise a fact issue that his salary grade determination was based on his race or national origin.

Defendant's motion for summary judgment is GRANTED, and plaintiff's claims are DISMISSED in their entirety.

SIGNED this 26 day of January, 2005.

ORLANDO L. GARCIA
UNITED STATES DISTRICT JUDGE